**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **PARKER HANNIFIN CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-1041 T** |
| | ) | **The Honorable Thomas C. Wheeler** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant,** | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION OF THE UNITED STATES TO DISMISS THE COMPLAINT FOR LACK OF JURISDICTION**

Plaintiff, Parker Hannifin Corporation (also referred to herein as "PHC"), hereby opposes Defendant's motion to dismiss the Complaint for lack of jurisdiction pursuant to Rule 12(b)(1), and respectfully requests that the Court deny Defendant's motion for the reasons set forth herein. In opposition, the Plaintiff states as follows:

## A. STATEMENT OF FACTS

Plaintiff filed a consolidated federal income tax return on Internal Revenue Service ("IRS") Form 1120 for the tax year ending June 30, 1987 ("1987 Tax Year") on or about March 15, 1988. Complaint ¶ 5. Subsequently, as a result of three separate federal audit adjustments, the IRS assessed additional income tax for Plaintiff's 1987 Tax Year in the net amount of $13,850,890, and $5,783,569 in deficiency interest. Complaint ¶ 22. Plaintiff alleges that it paid the deficiency and the deficiency interest on or about March 15, 1995. Complaint ¶ 23. However, according to the Defendant, only $12,434,836 of the deficiency was paid on or about March 15, 1995. Defendant's Motion to Dismiss at page 2. The remainder of the deficiency and deficiency interest was paid by crediting to Plaintiff's 1987 Tax Year an overpayment (the "1988 Credit") from Plaintiff's tax year ending June 30, 1988 (the "1988 Tax Year"). Defendant's

Motion to Dismiss at pages 2-3 and Exhibit A. Defendant asserts that the 1988 Credit was applied as a payment to Plaintiff's account for the 1987 Tax Year on February 5, 1999, without any explanation of how it arrived at that date. *Id.* However, as will be explained herein, the 1988 Credit was applied as a payment to Plaintiff's account for the 1987 Tax Year on March 1, 1999.

By letter dated May 26, 2000, Plaintiff filed a claim for refund with the IRS. Exhibit A of Complaint. In the claim for refund, Plaintiff sought the refund of deficiency interest for the 1987 Tax Year. As the legal basis for its refund claim, Plaintiff cited IRS Revenue Ruling 99-40, as well as the cases of *Avon Products, Inc. v. United States*, 588 F.2d 342 (2d Cir. 1978) and *May Department Stores Co. v. United States*, 36 Fed. Cl. 680 (1996). These authorities set forth what are commonly called "use of money" principles, *i.e.*, that the Government had the use of the Plaintiff's money for which it owed Plaintiff a credit or refund.

By letter dated February 23, 2001, Plaintiff supplemented its May 26, 2000 refund claim by submitting "enhanced tax/payment worksheets" showing exactly when and how Plaintiff's credit elects and payments were utilized in the payment of its estimated taxes and/or taxes due. Exhibit A of Complaint; *see also* time-stamped copy of February 23, 2001 letter, attached hereto as Exhibit A. Plaintiff's February 23, 2001 letter emphasized the same "use of money" legal authorities cited in the May 26, 2000 refund claim, and stated that: "To the extent that the IRS computed deficiency interest in a manner inconsistent with 'use of money' principles, and PHC paid such interest, PHC is entitled to a credit or refund."

By letter dated November 20, 2001, the IRS disallowed Plaintiff's refund claim. Exhibit B-1 of Complaint.

Defendant concedes that Plaintiff's May 26, 2000 refund claim was timely filed. Defendant's Motion to Dismiss at page 5. Defendant fails to mention, in its Motion to Dismiss,

that Plaintiff supplemented its May 26, 2000 refund claim by letter dated February 23, 2001. Instead, Defendant refers to Plaintiff's protest letter dated May 3, 2002, and its October 22, 2004 letter supplementing its protest letter and treats these letters as the claim for refund in this case.

Plaintiff contends that its May 26, 2000 letter was its refund claim, which Defendant concedes was timely filed. Plaintiff further contends that its February 23, 2001 letter supplemented its May 26, 2000 refund claim. Even if Plaintiff's February 23, 2001 letter is treated as either an amended refund claim or as a separate refund claim, it also was timely filed, as will be discussed below.

B. DISCUSSION

1. Standard of Review.

When deciding a motion to dismiss based on lack of subject matter jurisdiction, the Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Computervision Corp. v. United States*, 62 Fed. Cl. 299, 306 (2004). Once jurisdiction has been challenged, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *Id.* at 307. The Court may examine relevant evidence in order to resolve any factual disputes (*e.g.*, affidavits). *Id.*

2. Plaintiff Timely Filed a Refund Claim on May 26, 2000.

A suit for the refund of taxes and interest may be maintained in this Court, provided that a claim for refund or credit has been filed with the IRS in accordance with the applicable law and Treasury Regulations. 26 U.S.C. § 7422(a). A claim for refund or credit must be filed by the taxpayer within the later of three years from the time the return was filed or two years from the time the tax was paid. 26 U.S.C. § 6511(a). In addition, a claim for refund must "set forth in

detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402-2(b)(1). As will be explained below, Plaintiff has complied with both of these requirements.

The 1988 Credit was applied as a payment to Plaintiff's 1987 Tax Year. For purposes of establishing jurisdiction, this Court must determine the date on which the 1988 Credit was applied as a payment to Plaintiff's 1987 Tax Year, and whether Plaintiff's refund claim was filed within two years of that payment date. As will be explained below, Plaintiff submits that the 1988 Credit was applied as a payment on March 1, 1999, and that Plaintiff's refund claim of May 26, 2000 was filed within two years of March 1, 1999.

Section 7422(d) of the Internal Revenue Code of 1986, as amended, provides that the credit of an overpayment of any tax shall be deemed to be a payment in respect of a tax liability at the time the credit is "allowed." A credit is "allowed" on the date that it is applied and posted to a taxpayer's account. *Simmons v. United States*, 29 Fed. Cl. 136 (1993); Affidavit of Theresa Reiger ¶ 4(c), attached hereto as Exhibit B (hereinafter, the "Reiger Affidavit"). The posting date of the credit transfer to a taxpayer's account is known as the "23C Date." Reiger Affidavit ¶ 4(c). Accordingly, the 23C Date is the date that Plaintiff's 1988 Credit was applied as a payment to Plaintiff's 1987 Tax Year. Reiger Affidavit ¶ 6.

The 23C Date is listed on the IDRS on Line Input Chart ("IDRS Chart"), which is a chart created by the IRS for internal processing purposes. Reiger Affidavit ¶ 4(d). The IDRS Chart identifies specific 23C Dates for specific "processing cycles" (*e.g.*, cycle 199907). *Id.* The processing cycle is identified on a taxpayer's transcript of account. Reiger Affidavit ¶ 4(b). The transcript of account will identify the application of an overpayment credit by using transaction code 700 – Credit Applied. *Id.* The transcript of account also will specify the processing cycle

when the transfer of the credit occurred. *Id.* Thus, by matching the processing cycle for transaction code 700 to the IDRS Chart, the 23C Date is identified. Reiger Affidavit ¶ 4(e).

In the present case, there was a decrease in tax of $10,223,269 for the 1988 Tax Year that ultimately created the 1988 Credit. Plaintiff's transcript of account for the 1988 Tax Year (Exhibit A of the Reiger Affidavit) shows that the decrease in tax has a processing cycle of 199906, which according to the IDRS Chart (Exhibit C of the Reiger Affidavit) has a 23C Date of February 22, 1999. Reiger Affidavit ¶ 5. Thus, it was impossible for the 1988 Credit to have been applied as a payment on February 5, 1999, because the decrease in tax that created the 1988 Credit wasn't even posted until February 22, 1999. Plaintiff's transcript of account for the 1987 Tax Year also shows that the application of the 1988 Credit (transaction code 700) is cycle 199907. Exhibit B of Reiger Affidavit. In referring to the IDRS Chart for 1999, the 23C Date that corresponds to cycle 199907 is March 1, 1999. IDRS Chart, attached as Exhibit C of Reiger Affidavit. Thus, the 1988 Credit was applied as a payment to the 1987 Tax Year on March 1, 1999. Accordingly, Plaintiff had until March 1, 2001 (two years from March 1, 1999), to file a claim for refund with the IRS. Plaintiff filed its refund claim on May 26, 2000 – well before the end of the two-year period.

On February 23, 2001 (also before the end of the two-year period), Plaintiff provided additional information for its May 26, 2000 refund claim. In its February 23, 2001 letter (Exhibit A of Complaint), Plaintiff states:

> With respect to the computation of deficiency interest for the subject tax year, enclosed for your review are enhanced estimated tax/payment worksheets, which when considered, will result in a reduction to the deficiency interest assessed on the 8706 tax year. The credit elect worksheet (version one) that accompanied our refund claim (letter) of May 26, 2000, is consistent with current IRS procedures and recent Field Service Advice memoranda, but does not contain detailed information regarding: (1) at what point each of the credit elect overpayment amounts were actually effective as a payment against a liability for a subsequent

> tax year(s), (2) the estimated tax account balance as of the end of each quarterly period, or (3) interest-free refunds received by PHC with respect to originally filed returns.
>
> The revised worksheets show precisely when and how PHC satisfied each of its estimated tax and income tax return liabilities. . . .

Defendant completely ignores, and makes no mention in its Motion to Dismiss, the fact that Plaintiff provided additional information for its refund claim by its letter dated February 23, 2001. The February 23, 2001 letter is part of the May 26, 2000 refund claim because it is based on the same grounds. If Plaintiff's refund claim of May 26, 2000, or its letter dated February 23, 2001, had been untimely, the IRS would have rejected Plaintiff's claim on that basis. However, it did not. Rather, the IRS rejected Plaintiff's claim based upon the IRS' interpretation and application of substantive law. *See* IRS letter dated November 20, 2001, denying Plaintiff's claim for refund, attached as Exhibit B of Complaint.

Moreover, Defendant fails to provide any support or explanation for its assertion that the applicable payment date in this case is February 5, 1999. Conversely, Plaintiff has come forward with the IDRS Chart and the affidavit of a former IRS Tax Accounts Specialist and Management Analyst. These documents explain the internal accounting processes of the IRS and support Plaintiff's contention that the 1988 Credit was applied as a payment to its 1987 Tax Year on March 1, 1999. Accordingly, Plaintiff's claim for refund dated May 26, 2000, as supplemented by its letter dated February 23, 2001, was timely because it was filed within two years of March 1, 1999.

Because Plaintiff filed both its May 26, 2000 claim for refund, and its supplemental letter of February 23, 2001, in a timely manner, it has set forth in detail all grounds upon which it now seeks to recover $3,678,960 of interest paid to the IRS for the 1987 Tax Year.

3. The Doctrine of Substantial Variance Does Not Apply.

Contrary to Defendant's assertion, the doctrine of "substantial variance" does not apply in this case. The doctrine of substantial variance has been described as "a rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (citation omitted). According to Defendant, the doctrine of substantial variance denies this Court jurisdiction over Plaintiff's refund suit because Plaintiff's refund claim, dated May 26, 2000, was for the amount of $9,107.03, and was based on the theory of "interest suspension," but its refund suit is for over $3.6 million of interest and is based on "grounds fundamentally different from those set out in plaintiff's timely claim, and rel[ies] on different facts." Defendant's Motion to Dismiss at pages 5-6. The Defendant is incorrect for several reasons.

First, as noted above, Defendant fails to acknowledge, in its Motion to Dismiss, that Plaintiff provided to the IRS, by letter dated February 23, 2001, additional information for its May 26, 2000 refund claim in the form of revised worksheets showing precisely when and how Plaintiff satisfied each of its estimated tax and income tax return liabilities. Plaintiff's May 26, 2000 refund claim, supplemented by its February 23, 2001 letter, sets forth the same grounds (*i.e.*, "use of money" principles) for refund of the deficiency interest as does Plaintiff's Complaint. For instance, at pages 1 and 2 of its February 23, 2001 letter, Plaintiff states:

> The revised worksheets show precisely when and how PHC satisfied each of its estimated tax and income tax return liabilities. The worksheets also show the beginning and ending dates of the time periods during which PHC had overpaid its liabilities (during which periods the government would be considered to have use of PHC's funds) and the extent (i.e., amounts) of such overpayments.

* * *

> . . . .Based on "use of money" principles, interest can only be charged for the period of time a tax liability is both due and unpaid. Accordingly, underpayment interest on the above-described net general tax increase for 8706 should only begin to run from the date the Government is deprived of use of that money. The enclosed "Estimated Tax and Payments Utilization Summary" provides a detailed breakdown of the dates that the "use of money" amounts are available to provisionally reduce the balance upon which interest is calculated. . . .
>
> * * *
>
> In PHC's case, the overpayment credit elect amounts at issue were not used on the return due dates of the succeeding tax years. In addition, PHC overpaid many of its estimated tax installments (as demonstrated by the Estimated Tax/Payment Summary). Accordingly, the recomputation and reduction of interest for 8706 should take into consideration any period of time that the Government is considered to have interest free use of PHC funds, including, but not limited to, unused overpayment credit elects, overpaid estimated tax installments, and interest free refunds. By considering all "use of money" conditions, the correct interest amount will be determined and neither the Government nor the taxpayer will receive an inequitable double benefit.

Likewise, in ¶ 26 of the Complaint, Plaintiff clearly bases its refund suit on the same "use of money" principles described at length in its refund claim:

> [D]efendant failed to suspend the accrual of interest on the 1987 Deficiency amount (prior to their elimination by payment or carryback) that were offset by Excess Credit Elect Amounts and Excess Estimated Tax Payments, in each case during the periods those sums were held by the defendant on an interest-free basis. The defendant's failure to suspend the accrual of interest was erroneous and unlawful.

Additionally, many of the paragraphs in Plaintiff's Complaint set forth facts that are extracted directly from the revised worksheets attached to Plaintiff's February 23, 2001 letter. For example, paragraphs 6 and 7 of the Complaint, which describe Plaintiff's election to use the $628,463 overpayment for the 1987 Tax Year as a credit toward its estimated tax payments for the 1988 Tax Year as well as the $89,013 of unused credit that was not required to meet those estimated tax payments or to pay amounts shown on the return for the 1988 Tax Year, tie directly into page one of the revised worksheets attached to Plaintiff's February 23, 2001 letter. Similarly, paragraphs 8 and 9 of the Complaint, which describe Plaintiff's election to use the

$4,181,131 overpayment for the 1988 Tax Year as a credit toward its estimated tax payments for the tax year ending June 30, 1989 ("1989 Tax Year") as well as the $3,653,770 of unused credit that was not required to meet those estimated tax payments or to pay amounts shown on the return for the 1989 Tax Year, tie directly into page two of the revised worksheets attached to Plaintiff's February 23, 2001 letter. In fact, the amounts set forth in each of the paragraphs 5-19 of the Complaint are the same amounts set forth in the revised worksheets attached to Plaintiff's February 23, 2001 letter. Finally, Plaintiff attached in Exhibit A of the Complaint the revised worksheets which were a part of the February 23, 2001 letter.

Accordingly, because Plaintiff's timely refund claim and its Complaint set forth the same legal theories and factual bases for the refund of interest, the doctrine of substantial variance does not apply.

Second, even if Plaintiff's February 23, 2001 letter was treated as an amended refund claim, or a claim separate from the May 26, 2000 claim, it was still timely filed within two years of the March 1, 1999 payment date. As already explained, the grounds in the February 23, 2001 letter are the same as those set forth in the Complaint. Therefore, the doctrine of substantial variance does not apply. Additionally, because Plaintiff's February 23, 2001 letter was filed within two years of the March 1, 1999 payment date, Plaintiff has no need to assert the doctrine of "waiver" discussed by the Defendant at page 6 of its Motion to Dismiss.

Third, even if Defendant were correct that the 1988 Credit was applied as a payment to Plaintiff's 1987 Tax Year on February 5, 1999 (rather than March 1, 1999), the doctrine of substantial variance still would not apply because Plaintiff's February 23, 2001 letter would be considered an amendment that is "germane" to the May 26, 2000 refund claim, and which was presented to the IRS before the IRS disallowed the refund claim on November 20, 2001.

Amendments to a properly filed refund claim are permitted after the statute of limitations for filing refund claims has expired if the amendment is "germane" to the original claim and it was presented before the original claim is resolved. *Computervision Corp. v. United States*, 62 Fed. Cl. 299 (2004). The United States Supreme Court, in *United States v. Andrews*, 302 U.S. 517, 524 (1938), explained the "germane" requirement as follows:

> Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.

In its May 26, 2000 refund claim, Plaintiff claimed a refund of $9,107.03 of interest charged on $89,013 of its overpayment from its 1987 Tax Year that it elected to apply to its 1988 estimated tax payments but which, ultimately, was never needed to pay 1988 estimated taxes. Plaintiff relied upon and cited the "use of money" principles set forth in *Avon Products, Inc. v. United States*, 588 F.2d 342 (2d Cir. 1978), *May Dep't Stores Co. v. United States*, 36 Fed. Cl. 680 (1996), and Rev. Rul. 99-40, 1999-2 C.B. 441, as the rationale for applying that $89,013 to reduce its tax deficiency for the 1987 Tax Year and, correspondingly, to reduce the amount of deficiency interest charged by the IRS. Likewise, in its February 23, 2001, letter Plaintiff relied upon and cited the exact same "use of money" authorities relied upon and cited in the May 26, 2000 refund claim, and provides more detailed worksheets than were attached to the May 26, 2000 refund claim. These facts establish that Plaintiff's February 23, 2001 letter was "germane" to its May 26, 2000 refund claim because it was "merely mak[ing] more definite matters already within [the Commissioner's] knowledge, or which, in the course of his investigation, he would

naturally have ascertained. . . ." *Andrews*, *supra*. Moreover, Plaintiff's February 23, 2001 letter was presented to the IRS before the IRS disallowed Plaintiff's claim on November 20, 2001. *See* IRS letter dated November 20, 2001 denying Plaintiff's claim for refund, attached as Exhibit B of Complaint. Based on the foregoing, the doctrine of substantial variance does not apply.

Finally, even if Defendant were correct that the 1988 Credit was applied as a payment to the 1987 Tax Year on February 5, 1999, and it were determined that the February 23, 2001 letter was not "germane" to the May 26, 2000 refund claim, the doctrine of substantial variance still does not apply. Defendant has failed to allege exactly how the facts and legal grounds set forth in the May 26, 2000 refund claim differ from those set forth in the Complaint. Both the May 26, 2000 refund claim and the Complaint are based on "use of money" principles. The mere fact that there is a difference in the amount of deficiency interest at issue in the May 26, 2000 refund claim and the Complaint does not create a variance. *See e.g., Red River Lumber Co. v. United States*, 134 Ct. Cl. 444 (1956); *Burrell v. Fahs*, 232 F.2d 163 (5th Cir. 1956). The purpose of the substantial variance doctrine is to "prevent surprise and to give adequate notice to the [IRS] of the nature of the claim." *Western Co. of North America*, 323 F.3d 1024, 1034 (Fed. Cir. 2003) (citation omitted). Plaintiff's May 26, 2000, refund claim certainly put the IRS on notice of the "use of money" issues relating to the computation of deficiency interest for the 1987 Tax Year, and Defendant cannot now claim "surprise" at the fact that the Complaint is based on those same "use of money principles" for an amount of deficiency interest that is greater than that stated in the May 26, 2000 refund claim. Therefore, the doctrine of substantial variance does not apply, and this Court has jurisdiction over Plaintiff's refund suit.

## C. CONCLUSION

Plaintiff's May 26, 2000 refund claim, and its supplemental letter of February 23, 2001,

both were timely filed with the IRS before March 1, 2001, which was within two years of the applicable payment date, March 1, 1999. Thus, Plaintiff has set forth in detail all grounds upon which it now seeks to recover $3,678,960 of interest paid to the IRS for the 1987 Tax Year. Moreover, the doctrine of substantial variance does not apply.

For all of the foregoing reasons, this Court has jurisdiction over Plaintiff's refund suit, filed September 27, 2005. Additionally, Plaintiff respectfully requests the opportunity to conduct limited discovery to further provide additional evidence to demonstrate that the 1988 Credit was applied as a payment to the 1987 Tax Year on March 1, 1999, if the Court deems it necessary and appropriate.

WHEREFORE, Plaintiff prays that the Defendant's Motion to Dismiss the Complaint for Lack of Jurisdiction be denied.

Dated: March 29, 2006

PARKER HANNIFIN CORPORATION
By its attorney,

s/ William R. Stewart
William R. Stewart (0010680)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Telephone: 216-566-5580
Facsimile: 216-566-5800

Of Counsel:

s/ Jeffry J. Erney
Jeffry J. Erney (0040193)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Telephone: 216-566-5831
Facsimile: 216-566-5800