**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **PARKER HANNIFIN CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 05-1041 T** |
| | ) | **The Honorable Thomas C. Wheeler** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR LACK OF JURISDICTION**

In its Motion to Dismiss, the United States argued that plaintiff failed to file a proper administrative claim for refund, as required by § 7422(a) of the Internal Revenue Code,[1/] and that the Court is thus without jurisdiction to hear plaintiff's suit. An administrative claim for refund must not only set out the grounds for recovery urged by plaintiff in the subsequent refund suit, but must also have been filed within the applicable statute of limitation for doing so. The statute requires that, to be timely, the claim must have been filed within three years of the time the relevant return was filed, or within two years of a payment of tax with respect to the relevant year. § 6511(a). In the instant case, plaintiff relies upon the two-year period, and thus must prove the date of the latest payment of tax.

[1/] Unless otherwise noted, all section references herein are to the Internal Revenue Code, as in effect at the relevant time.

In our Motion to Dismiss, we observed that a letter from plaintiff to the Internal Revenue Service dated May 26, 2000 (Complaint ¶ 25; Complaint Ex. A), had been timely filed. But that letter failed to set out the grounds upon which plaintiff relies for recovery in the instant suit. Plaintiff thereafter sent to the Internal Revenue Service several additional documents. Plaintiff now contends that a letter dated February 23, 2001, was either timely filed, or a proper amendment of the May 26, 2000 letter. Plaintiff's Memorandum[2/] at 3. Plaintiff is wrong on both counts.

The parties agree that the last payment by plaintiff with respect to its fiscal year ending June 30, 1987 (the year in suit), was made via the crediting to that year of an overpayment of tax from the year 1988, in the amount of $10,223,269. To render plaintiff's February 23, 2001, letter a timely refund claim, the credit must have been made no earlier than two years prior to that date, that is, no earlier than February 23, 1999. In our motion to dismiss, the Government concluded that this amount was credited on February 5, 1999, rendering the February 23 letter untimely. In its opposition to our motion, plaintiff contends that the credit was made on March 1, 1999, rendering the February 23 letter timely. Plaintiff's Memorandum at 4, *et seq*. An examination of plaintiff's contentions shows that, in fact, the proper date is neither February 5, nor March 1, but is instead February 22, 1999, causing plaintiff's letter of February 23, 2001, to have been filed one day late.[3/]

---

[2/] Plaintiff's Memorandum in Opposition to Motion of the United States to Dismiss the Complaint for Lack of Jurisdiction, filed March 29, 2006.

[3/] Because the Government's factual predicate has changed since the filing of its original motion, we have no objection should plaintiff seek to file a response to this Reply. In considering a motion to dismiss for lack of jurisdiction, it is proper for the Court to accept as true all facts alleged in the complaint except to the extent that there are disputed jurisdictional facts,

Plaintiff maintains that the last payment date for plaintiff's fiscal 1987 tax year was March 1, 1999. In support of plaintiff's position, an affidavit from Theresa Reiger, identified as a former Tax Account Specialist and Management Analyst from the Ogden Internal Revenue Service Center, was submitted. We agree with Ms. Reiger's assertion that the $10,218,884 applied to plaintiff's fiscal 1987 tax year (the year in suit) was the result of a transfer of an overpayment from the income tax account for the tax period ended June 30, 1988 (Reiger Affidavit ¶ 6). Further, we agree that the overpayment to the plaintiff's fiscal 1988 tax year account was posted to the plaintiff's fiscal 1988 tax year income tax account during the 199906 cycle [4/] (transaction code 301 on Exhibit A to the Reiger Affidavit; Reiger Affidavit ¶ 5). Finally, we agree that $10,218,884 of the $10,223,269 overpayment credit from plaintiff's fiscal 1988 tax year was posted to the plaintiff's fiscal 1987 tax year income tax account on the Master File during the 199907 cycle (transaction code 700 on Exhibit B to the Reiger Affidavit; Reiger Affidavit ¶ 6).

---

in which case the court may consider other relevant evidence, even to the extent of holding a hearing. *See, e.g., Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 747 (Fed.Cir.1988); *Cupey Bajo Nursing Home, Inc. v. United States*, 23 Cl.Ct. 406, 411 (1991); *Raymark Industries, Inc. v. United States*, 15 Cl.Ct. 334, 335 (1988). As we note below, the dispute in this case is actually one of law, and not one of fact.

[4/] The data processing systems of the Internal Revenue Service date from the time when "batches" of data – such as payments, credits, assessments, refunds and the like – were processed and incorporated into an underlying data base. That is, such transactions were accumulated over some period of time, and then incorporated or processed all at once, in a "batch." The Service long ago adopted a seven-day period for such accumulation. Accordingly, data processing is divided up into one-week "cycles" throughout each year. "Cycle 199906" refers to the sixth cycle for calendar year 1999. Because 52 such seven-day periods do not fit neatly into a 365-day year, "cycle 199901" will not necessarily correspond to the first calendar week of 1999. Nonetheless, each such cycle corresponds to a particular identifiable period of the calendar year.

We part company with Ms. Reiger and with plaintiff, however, with respect to their assertion (Reiger Affidavit ¶¶ 4c, 4e, and 7) that an overpayment credit will be considered to be paid with respect to the year to which it is credited at the time that the credit is applied and posted to the application year. This statement is not only wrong, but is a matter of law, rather than of fact, and is accordingly not subject to proof via affidavit.

Plaintiff's Interpretation of the Law is in Error.

Section 6511(a) provides that, to be timely, plaintiff's claim in the instant case must have been filed within two years "from the time the tax was paid." The tax for plaintiff's fiscal 1987 tax year was paid by transfer of an overpayment credit from the fiscal year ended June 30, 1988. It must therefore be determined when a tax paid by an overpayment credit from another year is "paid" for purposes of § 6511(a).

Section 6402(a) authorizes the Internal Revenue Service to credit the amount of any overpayment against any liability in respect of an internal revenue tax on the part of the person who made the overpayment. But § 6402 does not specify the date on which the outstanding liability is considered paid by credit of an overpayment. Section 7422(d) provides:

> The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.

This statutory command refers to "allowance" *of the credit*, rather than to posting of entries to the Government's records, or the date on which the credit is entered as a payment.

The "time such credit is allowed" is provided in Code § 6407, "Date of Allowance of Refund or Credit," which states that the:

> date on which the Secretary first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax.

And Treasury Regulation § 301.6407-1 provides as follows in this respect:

> The date on which the district director or the director of the regional service center, or an authorized certifying officer designated by either of them, first certifies the allowance of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit with respect to such tax.

The decision of the Supreme Court in *United States v. Swift & Co.*, 282 U.S. 468 (1931), is instructive. As in the case at bar, the question there was application of the statute of limitation for filing a claim for refund. The Government contended that an overassessment was "allowed," and thus started the limitations clock, when the Commissioner certified the overassessment to the collector. Taxpayer claimed it was "allowed" when the Commissioner signed the schedule of refunds and credits later reported to him by the collector. The earlier date would have rendered taxpayer's claim untimely, the later date would have rendered it timely. While the Court concluded that the later date was controlling, what is significant is the fact that the entire analysis concentrates on determining on what date the overpayment was *authorized*, not on what date it was recorded. To similar effect are *Girard Trust Co. v. United States*, 270 U. S. 163 (1926); *Rahr Malting Co. v. United States*, 157 F. Supp. 803 (E.D. Wisc. 1957), aff'd 260 F.2d 309 (7th Cir. 1958) (payment of tax made on date of allowance of a credit or overassessment of another taxable year, that is, on the date the schedule of overassessment signed); Rev. Rul. 2001-40, 2001-2 C.B. 276. *See also General Instrument Corp. v. United States*, 33 Fed.Cl. 4 (1995),

determining that, for purposes of accrual of a cause of action for additional overpayment interest, the date on which "the Secretary first authorizes the scheduling of an overassessment," pursuant to § 6407 was "upon the execution of Form 2188, Voucher and Schedule of Overpayments and Overassessments." 33 Fed. Cl. at 5.

Thus, the relevant date is not the date that one or another entry was made on the Government's transcripts of account which record the transactions between the Government and plaintiff with respect to the latter's tax liability. Instead, the relevant date is the date on which the overpayment was authorized. Accordingly, plaintiff's factual argument, which concludes that the Service's transcripts show that the overpayment was *posted* to plaintiff's account on March 1, 1999, is entirely beside the point, because the posting date is irrelevant. It is the *authorization date of the overpayment* to which the law looks.

In support of its use of the "posting date," plaintiff cites *Simmons v. United States*, 29 Fed. Cl. 136 (1993). In *Simmons*, an overpayment of 1985 taxes was applied as a payment of 1984 taxes on April 3, 1989. The credit was reversed on the same day. On May 1, 1989, an overpayment from 1985 was again posted to 1984, and again reversed the same day. A refund claim filed by taxpayer on October 23, 1989, could only have been timely if the April and May credits, though immediately reversed, nonetheless constituted "payments" for purposes of § 6511. The Court of Federal Claims concluded that the "plain language of the statute is that a credit is a payment at the time that it is allowed." 29 Fed. Cl. at 141. Accordingly, the court held that the October 23, 1989 claim was timely. The issue in *Simmons* was not the relevant *date* on which a payment was deemed to be made when it is made by the crediting of an overpayment. Rather, the issue was *whether a payment had in fact been made,* since the credits were immediately reversed. *Simmons* thus answers no question relevant to the instant case.

The Overpayment was Allowed on February 22, 1999.

Plaintiff's position is in error because plaintiff has made a mistake of law. That is, plaintiff contends that the date on which the credit was applied (*i.e.*, posted to the 1987 account) is the legally relevant date for determining when plaintiff's last "payment" with respect to its 1987 taxes was made, for purposes of the statute of limitations set out in § 6511(a). Plaintiff's Memorandum at 4. Plaintiff's factual presentation, supported by Ms. Reiger's affidavit, concludes that that date was March 1, 1999. Reiger Affidavit ¶ 6. But Ms. Reiger also concluded that the 1988 tax decrease that created the overpayment was posted to the 1988 year during processing cycle 19906, which she explained would result in a "23C date" of February 22, 1999. Reiger Affidavit ¶ 5; Reiger Affidavit Ex. C. And she is correct, as a matter of fact.[5/] Inasmuch as we have demonstrated above that it is this allowance of the 1988 overpayment to be credited to 1987 that is legally significant, we could stop and rely on Ms. Reiger's factually correct conclusion that the allowance date was February 22, 1999, rendering plaintiff's February 23, 2001 claim untimely. Out of an abundance of caution, however, the Government proffers the affidavit of Marlene F. Hainley, a Team Manager in the Interim Revenue Accounting Control System department at the Cincinnati Internal Revenue Service Center. Her affidavit, attached as an exhibit to this reply, more correctly describes the administrative process leading to allowance of the overpayment on February 22, 1999.

---

[5/] However, taxpayer's affiant uses the term "23C date" as if it were synonymous with the date on which a transaction is *posted* to a taxpayer's account. *See, e.g.*, Reiger Affidavit ¶¶ 4(d), 4(e), 5, 6. This is inconsistent with this court's understanding of a "23C date," which is that the "23C" date is the date on which an assessment or an overassessment is "allowed" as that term is used in § 6407 and Treasury Regulation § 301.6407-1, both *supra*. *See, e.g.*, *Ghandour v. United States*, 37 Fed. Cl. 121, 125-26 (1997). It is apparent that, in this context, Ms. Reiger is referring to the date on which the action (assessment or overassessment) is authorized by execution of the appropriate form. With respect to assessments, that is Form 23C (hence the term "23C date"). But with respect to overassessments, as explained below, that is Form 2188.

As the parties agree, the account for plaintiff's fiscal 1987 tax year was paid by application of an overpayment credit from plaintiff fiscal 1988 tax year. Hainley Affidavit ¶ 7. The overpayment credit for plaintiff's fiscal 1988 tax year, in the amount of $10,223,269, was the result of an examination adjustment authorizing a tax abatement.[6/] Hainley Affidavit ¶ 8. The abatement was entered into the Integrated Data Retrieval System (IDRS) on February 2, 1999. Hainley Affidavit ¶ 8. It was posted to the Master File during cycle 199906, and showed a document locator number ("DLN") for the source document initiating said abatement of "17347-435-00008-9" (transaction code "301" on Ex. A to Reiger Affidavit). Reiger Affidavit ¶ 5; Hainley Affidavit ¶ 6. The "435" in the DLN reveals the Julian date[7/] on which the initiating document was generated, in this case the 35th day of 1999, or February 4, 1999. Hainley Affidavit ¶¶ 4(d); 6.

The document by which (in the words of Treasury Regulation § 301.6407-1, *supra*) a "director of the regional service center, or an authorized certifying officer . . . first *certifies the allowance* of an overassessment in respect of any internal revenue tax" is Form 2188, "Voucher and Schedule of Overpayment and Overassessment." Hainley Affidavit ¶ 9. The abatement is

---

[6/] Such an abatement (*i.e.*, reduction in the amount of tax due) might or might not result in a tax overpayment, depending upon other transactions in the account. For that reason, it is not the equivalent of authorization of an overpayment.

[7/] The Service uses the term "Julian date" to refer to the day of the year, from 1 through 366. That is, a "Julian date" is simply a number that corresponds with the day of the calendar year. Thus, the "Julian date" for May 1 is 121, as May 1 is the 121st day of the year. In document locator numbers, this Julian date is represented by adding 400 to the actual Julian value. Thus, May 1 becomes 521. *See, e.g.*, Hainley Affidavit ¶ 4(c). The reason normally given for such "incrementing" is that it avoids generation of duplicate document locator numbers. Use of Julian dates makes manual computation of the number of days between two dates easier.

not allowed until the Form 2188 is signed by the certifying officer. Treas. Reg. § 301.6407-1, *supra*; Internal Revenue Manual Section 3.17.79.1.3, Glossary of Terms (03-01-2006). *See General Instrument, supra*, 33 Fed. Cl. at 5. (The corresponding document which must be signed to authorize a tax *assessment* is a Form 23C. *See, e.g., Ghandour v. United States*, 37 Fed. Cl. 121, 125-26 (1997); *Huff v. United States*, 10 F.3d 1440, 1446, n.5 (9th Cir. 1993).) Accordingly, the operative date for the allowance of an overpayment credit resulting from an abatement is the date that the Form 2188 is signed.

In this case, the relevant Form 2188 has been destroyed in accordance with the Service's normal document-destruction policy. Hainley Affidavit ¶ 11. However, based upon the automatic data processing systems in place during 1999, the entry of the abatement request into IDRS on February 4, 1999, in the normal course,[8/] would have automatically generated a Form 2188 during the posting cycle 9906. Hainley Affidavit ¶ 10. The Form 2188 generated during that posting cycle would have been pulled on February 18, 1999, and would have been signed by a certifying officer on the following Monday, February 22, 1999. Hainley Affidavit ¶ 10.[9/] Accordingly, the overpayment for plaintiff's fiscal 1988 tax year was allowed on February 22, 1999, and plaintiff's claim for refund – filed February 23, 2001, came one day too late.

---

[8/] "The 'presumption of regularity' supports official acts of public officers. In the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties." *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed.Cir.2002); *Jazz Photo Corporation v. United States*, 439 F.3d 1344, 1352 (Fed. Cir. 2006).

[9/] This is entirely consistent with the dates indicated by plaintiff's affiant, via Exhibit C to the Affidavit of Theresa Reiger.. This date – February 22, 1999 – is the "23C" date to which plaintiff's affiant refers. Reiger Affidavit, ¶ 5.

Plaintiff's Untimely Claim is Not a Valid Amendment of a Timely Claim.

Once it is determined that plaintiff's February 23, 2001, claim was itself untimely, there remains the question of whether it constituted a valid amendment of plaintiff's admittedly timely claim, previously filed on May 26, 2000. Plaintiff claims that it is. Plaintiff's Memorandum at 9-11. This, plaintiff argues, arises naturally from the fact that both claims rely upon "use of money" principles to reduce the amount of deficiency interest for which plaintiff would otherwise be liable. But all interest issues involve "use of money" principles, by definition, and a taxpayer may raise one interest question while failing to raise any number of others. *Computervision Corp. v. United States*, --- F.3d ----, 2006 WL 1028581 (Fed. Cir., April 20, 2006), *aff'g* 62 Fed.Cl. 299 (2004). *See also, Mobil Corp. v. United States*, 52 Fed.Cl. 327 (2002).

As we noted in our original Motion to Dismiss (at 5-6):

> In the instant case, plaintiff's first claim for refund (filed March 26, 2000) was filed within the period of limitation, but failed to raise the legal argument, or set out the factual basis for the argument, that plaintiff now makes in the complaint. While that timely claim seeks a refund based on interest suspension, it directed the Commissioner's attention only to the fact that deficiency interest for tax year 1987 had been improperly charged from March 15, 1988, to September 15, 1988, on $89,013 of the amount plaintiff had elected to credit to its estimated taxes for its 1988 year, and cited Revenue Ruling 99-40 for the proposition that such interest was erroneous. The claim sought a refund of $9,107.03. The instant complaint, in contrast, claims a refund of more than $3.6 million, on grounds fundamentally different from those set out in plaintiff's timely claim, and relying on different facts. Plaintiff's suit therefore cannot rely upon its timely claim for refund to grant jurisdiction for this court to hear its suit.

The question is whether plaintiff's later-filed (untimely) claim is "germane" to its earlier (timely) claim for refund. As the Supreme Court explained in *United States v. Andrews*, 302 U.S. 517, 524 (1938):

> . . . a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.

Plaintiff's timely claim filed in 2000 raised the legal question decided in taxpayers' favor by this court in *May Department Stores v. United States*, 36 Fed. Cl. 680 (1996). Following the Government's defeat in that case, the Commissioner expanded and rationalized its application. *See* Rev. Rul. 99-40, 1999-2 Cum. Bull. 441. But in the instant suit, plaintiff does not present such a claim. In fact, plaintiff now asserts the legal claim *rejected* by this court in *Fleetboston Financial Corporation v. United States*, 68 Fed.Cl. 177 (2005). One may ask why – if, as plaintiff claims – the two issues are really the very same issue, one might be decided against the Government, while the other is decided in favor of the Government. The answer, of course, is that they are not the same issue, and rely on rather different facts.

Plaintiff's timely claim, filed in 2000, asserted entitlement to the modest relief set out in Revenue Ruling 99-40, and claimed a modest refund of just more than $9,000. Plaintiff's untimely claim, filed in 2001 (assuming it actually clearly sets out the issue stated in the complaint), instead raises a different question, requiring many additional facts (set out at considerable length in plaintiff's untimely claim), argued by plaintiff to result in a refund of $3,600,000. The first (timely) claim in no way prevented surprise, or gave adequate notice as to the nature of the second claim, urged in the complaint. *Western Co. of North America v. United States*, 323 F.3d 1024, 1034 (Fed. Cir. 2003). It did not rely upon the same facts, or facts which

would inevitably have been discovered and evaluated by the Commissioner. *United States v. Andrews, supra.* Indeed, if plaintiff's timely claim filed in 2000 really does set out the claim that is the basis for the instant suit, one may wonder why plaintiff is so insistent that the untimely claim in 2001 is a valid amendment. It would seem more prudent for plaintiff simply to rely on the timely claim filed in 2000. The reason plaintiff does not do so is that the first (timely) claim obviously fails to set out the claim made in the complaint. Like the situation in *Computervision, supra*, ". . . the amended claim was not in fact germane to the original claim. The original claim did not merely claim an identical amount under a different theory. It claimed a different amount under a different theory." Slip Op. at 24.

WHEREFORE, defendant prays that the complaint be dismissed, without prejudice, with all allowable costs assessed against plaintiff.

s/ W. C. Rapp
W. C. RAPP
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*Voice: (202) 307-0503*
*Fax: (202) 514-9440*
*Email: william.c.rapp2@usdoj.gov*

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*

April 26, 2006

s/ David Gustafson
Of Counsel