# In the United States Court of Federal Claims

No. 05-1041T

(Filed: May 23, 2006)

| | | |
|---|---|---|
| PARKER HANNIFIN CORPORATION, Plaintiff, v. THE UNITED STATES, Defendant. | * | Tax refund suit; Timeliness and amendment of administrative claim; Credit allowance date; Admissibility of content of destroyed IRS document. |

*William R. Stewart*, with whom was *Jeffry J. Erney,* Thompson Hine, LLP, Cleveland, Ohio, for Plaintiff.

*W. C. Rapp*, with whom were *Eileen J. O'Connor*, Assistant Attorney General, and *David Gustafson*, Acting Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER ON MOTION TO DISMISS

WHEELER, Judge.

Before the Court is Defendant's January 27, 2006 motion, filed pursuant to Rule 12(b)(1) of the Court of Federal Claims, to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. For the reasons stated below, Defendant's motion is DENIED.

### Background

Defendant contends in this tax refund case that Plaintiff, Parker Hannifin Corporation, failed to file a timely administrative claim for refund with the Internal Revenue Service

("IRS"). Filing an administrative claim with the IRS is a jurisdictional prerequisite to commencing a tax refund action in this Court. 26 U.S.C. § 7422(a). The administrative claim must be filed with the IRS within three years of filing the return for the year for which refund is sought, or within two years of a payment with respect to that year, whichever is later. 26 U.S.C. § 6511(a). The taxpayer's administrative claim also must specify the grounds which the taxpayer alleges in the later suit. Failure to specify the grounds administratively deprives the Court of jurisdiction under the doctrine of "variance." See, e.g., Lockheed Martin Corp. v. United States, 210 F.3d 1366, 1371 (Fed. Cir. 2000).

Plaintiff's suit is for refund of alleged overpayments on Plaintiff's corporate income tax liability for the fiscal year ended June 30, 1987. (Complaint at ¶ 1). Plaintiff filed its return for that year on or about March 15, 1988 with the IRS Service Center in Cincinnati, Ohio. Id. at ¶ 5. After the filing of that return, the IRS assessed a deficiency against Plaintiff in the amount of $13,850,890 in tax, and $5,783,569 in deficiency interest. Id. at ¶ 22. Plaintiff alleges that it paid this deficiency on or about March 15, 1995. Id. at ¶ 23. According to Defendant, however, Plaintiff paid only $12,434,836 on March 15, 1995, an amount insufficient to satisfy the principal tax deficiency. Plaintiff paid the remainder of the principal deficiency, and all of the deficiency interest, by crediting part of a $10,218,884 overpayment from Plaintiff's 1988 tax year. Defendant alleged that the IRS allowed the credit on February 5, 1999, and stated that Plaintiff's two-year period to file an administrative claim therefore commenced on that date. (Defendant's January 27, 2006 Motion to Dismiss, at 2-3, Exh. A). Defendant later amended its position by asserting that the IRS allowed the credit on February 22, 1999. (See Defendant's April 26, 2006 Reply in Support of Motion to Dismiss). If February 22, 1999 is the effective date of the credit, Plaintiff had until February 22, 2001 to file an administrative claim with the IRS. See 26 U.S.C. § 6511(a).

By letter dated May 26, 2000 to the IRS, Plaintiff's accountant, Pricewaterhouse Coopers LLP ("PwC"), filed on Plaintiff's behalf a claim for refund of deficiency interest alleged to have been overpaid for Plaintiff's 1987 tax year. (Complaint at ¶ 25, Exh. A). PwC asserted in this letter that deficiency interest for 1987 had been improperly charged from May 15, 1988 to September 15, 1988 on $89,013 of the amount that Plaintiff had elected to credit to its estimated taxes for its 1988 tax year. PwC cited Revenue Ruling 99-40 for the proposition that such interest was erroneous, and sought a refund of $9,107.03. (Complaint, Exh. A). PwC also cited "use of money" principles established in Avon Products, Inc. v. United States, 588 F.2d 342 (2d Cir. 1978) and The May Department Stores Co. v. United States, 36 Fed. Cl. 680 (1996) (IRS can only charge interest for periods that a tax liability is both due and unpaid).

PwC filed another letter with the IRS on Plaintiff's behalf on February 23, 2001, regarding the computation of deficiency interest for Plaintiff's tax year ended June 30, 1987.

(Complaint at ¶ 25, Exh. A at A-12). Plaintiff characterizes this letter as "supplementing" its May 26, 2000 claim for refund, and the February 23, 2001 letter does in fact refer to the May 26, 2000 refund claim. Id. However, the February 23, 2001 letter substantially increased the amount of the refund claim for deficiency interest (although a precise claim amount is unstated), and the substance of a Credit Elect Analysis attached to the letter more directly tracks the allegations of Plaintiff's complaint.

The IRS denied Plaintiff's refund claim by letter dated November 20, 2001. (Complaint at ¶ 26, Exh. B). The IRS's denial letter refers to the date of Plaintiff's claim as February 23, 2001, not May 26, 2000. Id. at 1. Also, when PwC filed a protest letter with the IRS on May 3, 2002, PwC referenced the refund claim dated February 23, 2001, not the letter submitted on May 26, 2000. (Complaint at ¶ 27, Exh. C).

In the briefing on Defendant's motion to dismiss, the parties agreed that the allegation in Plaintiff's complaint, at paragraph 23, is incomplete, and that Plaintiff did not pay the entire amount of the principal deficiency or the deficiency interest on March 15, 1995. The parties also agreed that Plaintiff paid the remainder of the principal deficiency, and all of the deficiency interest, by crediting part of an overpayment from Plaintiff's 1988 tax year. They disagreed, however, as to the effective date of the credit. The date of the credit is relevant if Plaintiff's administrative claim is deemed to have been the February 23, 2001 letter, as opposed to the earlier May 26, 2000 letter. The effective date of the credit is between February 5, 1999 and March 1, 1999, depending upon the interpretation given to various IRS actions during that period.

The parties submitted competing affidavits on the question of when a credit is "allowed" for purposes of 26 U.S.C. ¶ 7422(d).[1] That section provides that "[t]he credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." Id. By referencing the records relating to Plaintiff's credit, and reciting applicable IRS procedures, the affiants nevertheless reach different conclusions. According to Plaintiff, a credit is "allowed" on the date that it is applied and posted to a taxpayer's account. (Affidavit of Theresa Reiger at ¶ 4(c)). Looking

---

[1] Plaintiff submitted the March 27, 2006 affidavit of Theresa Reiger, a former tax account specialist for the IRS, now employed by PwC. Defendant submitted the April 20, 2006 affidavit of Marlene F. Hainley, currently a team manager for the IRS in the Internal Revenue Accounting Control System ("IRACS"). Both of these affiants demonstrated knowledge of IRS procedures for processing assessments, payments, and the application of overpayment records. However, neither of the affiants claimed any personal knowledge of the IRS's handling of Plaintiff's specific overpayment credit at issue.

to the posting date here, Ms. Reiger concluded that the operative date is March 1, 1999. Id. ¶ 6. Conversely, Defendant asserts that the "posting" date is immaterial, and that the authorization date of the credit establishes when a credit is "allowed." (Affidavit of Marlene F. Hainley at ¶¶ 10, 12). According to Ms. Hainley, the IRS allowed the credit on February 22, 1999. Id.

As Ms. Hainley has acknowledged, however, the key document containing the signature of a certifying officer, Form 2188, Voucher and Schedule of Overpayment and Overassessment, has been destroyed in accordance with IRS record retention and destruction policies. Id. at ¶ 11. Defendant's position thus is based upon a presumption that normal IRS procedures were followed, and not upon an actual record showing when Plaintiff's credit was authorized. Despite the absence of the Form 2188, Ms. Hainley nevertheless maintains that the "overpayment . . . was allowed on February 22, 1999." Id. ¶ 12.

On the record presented, the Court must determine the date on which the IRS allowed Plaintiff's credit, and whether Plaintiff filed an administrative claim with the IRS within two years after that date.

## Analysis

### 1. Standard of Review

When considering a motion to dismiss for lack of jurisdiction, the Court should consider all relevant evidence in order to resolve disputes as to the truth of the jurisdictional facts alleged in the complaint. Reynolds v. Army & Air Force Exchange Services, 846 F.2d 746, 747 (Fed. Cir. 1988). The Court is required to decide any disputed facts which are relevant to the issue of jurisdiction. Id. The Supreme Court has held that "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Son Broadcasting, Inc. v. United States, 42 Fed. Cl. 532, 537 (1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The burden of establishing that the Court has subject matter jurisdiction rests with the party seeking to invoke the Court's jurisdiction. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936). The determination of jurisdiction is more than a pleading requirement, because each element of subject matter jurisdiction "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Sommers Oil

Co. v. United States, 46 Fed. Cl. 303, 305 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). If there are disputed jurisdictional facts, the Court may consider relevant evidence, even to the extent of holding a hearing if necessary. Reynolds, 846 F.2d at 747. A plaintiff must establish jurisdiction by a preponderance of the evidence. Id; see also Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996) (describing standard of review on motion to dismiss).

2. The Date of Plaintiff's Administrative Claim

If the Court finds that Plaintiff submitted an administrative claim to the IRS by PwC's May 26, 2000 letter, then Plaintiff's claim is timely regardless of when the IRS allowed Plaintiff's credit. Plaintiff submitted its May 26, 2000 letter to the IRS within two years after the allowance of the credit, whether the effective date of the credit is February 22, 1999, March 1, 1999, or any date between February 5, 1999 and March 1, 1999. As Defendant acknowledges, an administrative claim may be clarified or made more specific by a later amendment. (Defendant's Motion to Dismiss at 7). Amendments to a properly filed refund claim are permitted after the statute of limitations for filing refund claims has expired if the amendment is "germane" to the original claim and was presented before the original claim is resolved. United States v. Andrews, 302 U.S. 517, 524 (1938). The Supreme Court in Andrews explained when an amendment will be "germane" to the original claim as follows:

> Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.

Here, while Plaintiff greatly increased the amount of its refund claim in the February 23, 2001 letter, Plaintiff still relied upon the same "use of money" principles cited in its May 26, 2000 letter. In both letters, Plaintiff cited Avon Products, Inc., May Department Stores Co., and Rev. Rul. 99-40 as the rationale for reducing the amount of the tax deficiency, and the deficiency interest. Both letters related to corporate tax year 1987, and both letters advanced Plaintiff's claims for refund of deficiency interest. As Plaintiff notes, the

information provided in Plaintiff's February 23, 2001 letter simply is Plaintiff's tax transcript information that IRS already possessed. (See May 10, 2006 Sur-Reply at 4).

The purpose of requiring the amended claim to be "germane" to the original administrative claim is to "prevent surprise and to give adequate notice to the [IRS] of the nature of the claim." Western Company of North America v. United States, 323 F.3d 1024, 1034 (Fed. Cir. 2003) (quoting Union Pacific Railroad Co. v. United States, 182 Ct. Cl. 103, 108 (1968)). The Court finds Plaintiff's method of claim presentation somewhat unusual, in submitting a $9,000 claim initially and then amending it to approximately $3.6 million, but the amendment should not have surprised the IRS once it began to analyze the data, as Plaintiff has done in the Credit Elect Analysis attached to PwC's February 23, 2001 letter. The Credit Elect Analysis presents extensive data from tax years 1987 through 1999 as support for Plaintiff's position.

Moreover, the references by IRS and PwC to the February 23, 2001 claim date in later correspondence[2] certainly do not compel the Court to ignore the May 26, 2000 claim. By virtue of the February 23, 2001 amendment, the administrative claim was complete, and it would be reasonable for IRS and PwC to refer to the amendment as being the complete claim. It may have been more accurate to say "May 26, 2000 claim, as amended February 23, 2001," but the failure to describe the claim in this manner in the subject line of a letter is not binding or controlling.

Accordingly, the Court concludes that Plaintiff timely submitted its administrative claim to the IRS on May 26, 2000, within two years of the effective date of Plaintiff's overpayment credit. The Court also finds that the February 23, 2001 letter was a proper amendment to the original claim. The Court notes, however, that Plaintiff's pleading of these jurisdictional facts in its complaint could have been much more precise, and that Plaintiff perhaps could have saved considerable effort in opposing Defendant's motion if it had laid out the facts more clearly. Defendant certainly was justified in questioning the events alleged in paragraphs 23 and 25 of the complaint.

3. The Date of the IRS Allowance of Plaintiff's Credit

Even if Plaintiff's refund claim were deemed filed on February 23, 2001, the Court still would be inclined to deny Defendant's motion to dismiss due to the shortcomings in Defendant's proof on when the IRS allowed Plaintiff's overpayment credit.

---

[2] See the IRS claim denial letter, dated November 20, 2001, and the PwC protest letter, dated May 3, 2002.

The Court accepts for purposes of analysis that a credit is allowed on the date that an authorized IRS representative signs Form 2188, Voucher and Schedule of Overpayment and Overassessment. (Hainley Affidavit at ¶¶ 9-10). This conclusion is consistent with 26 U.S.C. ¶ 7422(d), providing that "[t]he credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." Further support is found in 26 U.S.C. § 6407, stating that "[t]he date on which the Secretary first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax." Treasury Regulation § 301.6407-1 is to the same effect, and points to the date on which an "authorized certifying officer . . . first certifies the allowance of an overassessment." See also General Instrument Corp. v. United States, 33 Fed. Cl. 4, 6 (1995) (confirming correct interpretation of Treasury Regulation § 301.6407-1).

The problem in this instance is that the IRS destroyed Form 2188 authorizing Plaintiff's tax credit. (Hainley Affidavit at ¶ 11). On the strength of Ms. Hainley's affidavit, Defendant argues that the Form 2188 "in the normal course . . . would have been pulled on February 19, 1999, and would have been signed by a certifying officer on the following Monday, February 22, 1999." (Defendant's April 26, 2006 Reply at 9; Hainley Affidavit at ¶ 10). Courts will permit the IRS to prove the content of a destroyed document, such as Form 2188, through evidence of the normal practices of IRS, but Defendant must offer some reliable evidence to the Court establishing the date on which the Form 2188 was signed. See Godfrey v. United States, 997 F.2d 335, 338-39 (7th Cir. 1993) (in action for interest on delayed refund check, conclusory affidavit to show date of IRS mailing did not establish presumption of regularity).

Defendant has not cited any authoritative IRS procedure establishing when a Form 2188 must be signed. While Ms. Hainley has stated that ACO Operations Manager Beverly S. Nadermann "would have signed" the Form 2188 on February 22, 1999 (Hainley Affidavit at ¶ 10), the Court has no evidence to confirm that this statement is correct. Ms. Hainley claims no personal knowledge of the date that Ms. Nademann actually signed the Form 2188, and there is no evidence from Ms. Nadermann.[3] Without more, the Court cannot find that the Form 2188 actually was signed on February 22, 1999. The Court cannot dismiss

[3] According to Ms. Hainley, vouchers and schedules of payment are scheduled for destruction six years and three months after the period of the account. (Hainley Affidavit at ¶ 11). For a February 1999 transaction, the Form 2188 would have been destroyed no earlier than May 2005. By that time, the IRS knew or should have known that Plaintiff's tax refund claim still was unresolved and perhaps headed for litigation. A prudent agency might well have overridden standard document destruction policy and preserved the evidence for later use.

Plaintiff's complaint on a presumption of regularity where the most probative evidence no longer exists, and where Defendant has not offered any other reliable evidence to establish the date of signing.

## Conclusion

Based upon the foregoing, Defendant's motion to dismiss the complaint for lack of jurisdiction is DENIED. Defendant is directed to file its answer to Plaintiff's complaint within 20 days from the date of this Opinion and Order. Thereafter, the parties will adhere to the Case Management Procedures contained in Appendix A of the Court's rules.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge